### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

**MITCHELL WINE,**

      **Plaintiff,**

         **v.**

**U.S. DEPARTMENT OF THE INTERIOR,**
*et al.*,

      **Defendants.**

**Civil Action No. 23-158 (JEB)**

### <u>MEMORANDUM OPINION</u>

*Pro se* Plaintiff Mitchell Wine is a former employee of the U.S. Department of Interior. In 2017, federal and state authorities entered onto his property in Arkansas without permission in order to recover government-issued computer equipment that he had apparently refused to return. Perceiving this episode as a gratuitous violation of his rights, he has sued the State of Arkansas, Interior, the U.S. Department of Homeland Security, the two law-enforcement officers from DHS and Arkansas who entered his property, and an official at Interior who he believes directed the break-in.  Employing a wide range of arguments that would make any law-school-exam creator proud, the Federal Defendants and the Arkansas officer have separately moved to dismiss.  The Court will grant both Motions.  Although the State of Arkansas has neither joined these Motions nor filed its own, the Court will dismiss all claims against it *sua sponte* for want of jurisdiction.

### I.      Background

As it must at this stage, the Court assumes that the facts pled in the Complaint are true. Further, because Plaintiff is *pro se*, the Court also considers any additional facts alleged in his

briefs opposing both Motions to Dismiss.  See Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015).

Between early 2003 and April 2018, Wine was employed as a biologist at the Fish and Wildlife Service within the Department of Interior.  See ECF No. 1 (Compl.), ¶¶ 2, 22.  At some point during his tenure, he learned that Interior had (in his view) unlawfully permitted a hog farm in the Buffalo National River Watershed of Arkansas despite risks to the environment and human safety.  Id., ¶¶ 9, 22.  After making his concerns known to the Office of Special Counsel, Plaintiff was "forced into medical retirement."  Id., ¶¶ 10, 22.  On December 14, 2017, just a few months prior to that untimely exit, federal and state officials — namely, Federal Protective Service Officer Adrian Henry and Arkansas Game and Fish Commission Officer John Crisman — entered uninvited onto Wine's private property in Arkansas to retrieve government-owned computer equipment that he had refused to relinquish.  Id., ¶¶ 2–3, 5–8.

These events spawned three prior lawsuits in the Federal Circuit and our federal district court based on a range of grievances — including allegations of whistleblower retaliation by OSC and Interior's purportedly unsatisfactory response to his Freedom of Information Act request for records related to the December 2017 entry onto his property.   See Wine v. Merit Systems Protection Board, 815 F. App'x 518, 518 (Fed. Cir. 2020); In re Wine, 820 F. App'x 1025, 1026 (Fed. Cir. 2020); Wine v. Dep't of Interior, 2022 WL 3715799 (D.D.C. Aug. 29, 2022).  In the instant action, which commenced in January 2023, Plaintiff claims that that very intrusion violated the Fourth Amendment, federal civil-rights statutes (18 U.S.C. §§ 241, 242), and an Arkansas criminal-trespassing law (Arkansas Code § 5-39-203).  Id., ¶¶ 28–46.  He seeks money damages only, id. at 6–7, and lists as defendants Crisman, Henry, and a "supervisor" at Interior named Chris Davidson (all in their official and personal capacities), as well as their

respective government employers — the State of Arkansas, the Department of Homeland Security, and Interior. Id. at 1.

On May 15, 2024, Crisman moved to dismiss, and the Federal Defendants followed suit the subsequent week, requesting dismissal or, alternatively, transfer of the case to Arkansas. At the tail end of the briefing on those Motions, Wine filed a separate Motion for Jurisdictional Discovery, which the Court denied. See ECF Nos. 32 (Mot. for Discovery), 36 (Order Denying Discovery). The pending Motions to Dismiss are the subject of this Opinion.

## II.    Legal Standard

A complaint may be dismissed for lack of subject-matter jurisdiction. See Fed. R. Civ. Pro 12(b)(1). In general, courts must first address jurisdictional arguments before turning to the merits. See Sinochem Int'l Co. v. Malaysia Int'l Shipping Co., 549 U.S. 422, 430–31 (2007). A plaintiff bears the burden of proving that a court has subject-matter jurisdiction to hear her claims. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

Under Federal Rule of Civil Procedure 12(b)(2), a court may also dismiss a suit if it lacks personal jurisdiction over the defendant. The plaintiff bears the burden of establishing such jurisdiction, FC Inv. Grp. LC v. IFX Mkts., Ltd., 529 F.3d 1087, 1091 (D.C. Cir. 2008), but courts resolve factual discrepancies in her favor. See Livnat v. Palestinian Auth., 851 F.3d 45, 57 (D.C. Cir. 2017). When personal jurisdiction is challenged, "the district judge has considerable procedural leeway in choosing a methodology for deciding the motion." 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 (3d ed. 2004).

The court may rest on the allegations in the pleadings, collect affidavits and other evidence, or even hold a hearing.  Id.

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted."  In evaluating a defendant's motion to dismiss, the court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1250 (D.C. Cir. 2005).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

## III.   Analysis

In seeking dismissal, both Crisman and the Federal Defendants present a veritable smorgasbord of defenses to Plaintiff's suit — including sovereign immunity, qualified immunity, lack of personal jurisdiction, insufficient service of process, res judicata, and an assortment of Bivens-related defects.  The Court considers here only a selection of the most obvious and dispositive arguments.  As their applicability varies on a defendant-by-defendant basis, the Court shall structure its analysis in that manner, beginning with the State of Arkansas and its officer, John Crisman.

4

A.  Arkansas Defendants

1.  *Sovereign Immunity*

Crisman, who is sued in both his official and personal capacities, moves to dismiss the former claims on the ground, *inter alia*, of sovereign immunity.  See ECF No. 24 (Crisman MTD) at 6–7.  Although Arkansas does not itself move for dismissal, any such immunity, derivative of the state's own sovereignty, would necessarily apply to it as well.  Further, because the doctrine implicates the Court's subject-matter jurisdiction, see FDIC v. Meyer, 510 U.S. 471, 475 (1994), the Court may consider *sua sponte* whether dismissal of Arkansas is also warranted. See Brown v. Sec'y of the Army, 78 F.3d 645, 648 (D.C. Cir. 1996) (sovereign's consent to suit "is the sort of jurisdictional question which may be raised at any time, either by the parties or by the court sua sponte"); cf. Mowrer v. United States Dep't of Transportation, 14 F.4th 723, 735, 743 (D.C. Cir. 2021) (Katsas, J., concurring) (noting intra-circuit conflict as to whether sovereign immunity must be decided before reaching merits but reaffirming that courts may decide it first).

Indeed, it is warranted here.  The Supreme Court has "understood the Eleventh Amendment to confirm the structural understanding that States entered the Union with their sovereign immunity intact, unlimited by Article III's jurisdictional grant."  Virginia Off. for Prot. & Advoc. v. Stewart, 563 U.S. 247, 253 (2011).  Therefore, "absent waiver" by a state itself, or "valid abrogation" by Congress, "federal courts may not entertain a private person's suit against a State."  Id. at 254.  The same principles apply to state officials sued in their official capacity for monetary damages.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 & n.10 (1989) ("[A] suit [for damages] against a state official in his or her official capacity . . . is no different from a suit against the State itself.").  Wine has identified no waiver or abrogation of Arkansas's

immunity.  Not in 42 U.S.C. § 1983, which does not authorize suits against states.  Id. at 64 ("[A]
State is not a person within the meaning of § 1983.").  Nor in 18 U.S.C. §§ 241 and 242, both of
which are provisions of the federal criminal code that do not grant a private right of action
against anyone, let alone states.  See Boling v. United States Parole Comm'n, 290 F. Supp. 3d
37, 46–47 (D.D.C. 2017), aff'd, No. 17-5285, 2018 WL 6721354 (D.C. Cir. Dec. 19, 2018).  Nor
in Arkansas Code § 5-39-203, which is also a criminal statute and contains nothing resembling a
waiver.  Nor in Arkansas Code § 16-123-105, see ECF No. 26 (Pl. Opp. to Crisman MTD), ¶ 6,
which, by its terms, grants a cause of action for violations of the Arkansas Constitution
perpetrated by a "person," and not violations of the U.S. Constitution brought against the state
itself.  Wine's claims, therefore, can proceed against neither Arkansas nor its officer in his
official capacity.

### 2.  *Personal Jurisdiction*

Any remaining claims against Crisman in his personal capacity may be dispatched for
want of personal jurisdiction.  See Crisman MTD at 3–6.  Such jurisdiction may either be general
or specific.  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).

The Due Process Clause permits general jurisdiction when a defendant maintains
sufficiently systematic and continuous contacts with the forum state, regardless of whether those
contacts gave rise to the claim in the particular suit.  Helicopteros Nacionales de Colombia, S.A.,
v. Hall, 466 U.S. 408, 414–16 (1984).  The "paradigm forum" for exercising general jurisdiction
over an individual is her domicile.  See Daimler AG v. Bauman, 571 U.S. 117, 137 (2014); Nat.
Community Reinvestment v. Novastar Financial, 631 F. Supp. 2d 1, 4 (D.D.C. 2009); Pinson v.
U.S. Dep't of Just., 74 F. Supp. 3d 283, 294 (D.D.C. 2014).

Specific jurisdiction, conversely, permits a court to adjudicate "issues deriving from, or connected with, the very controversy that establishes [the] jurisdiction." Id. at 919 (citation omitted).  To show specific jurisdiction, a plaintiff must meet the requirements of the Due Process Clause and that jurisdiction's long-arm statute.  D.C.'s statute enumerates the kinds of contacts with the District that are sufficient to bring a non-resident defendant into a D.C. court:

> (1) transacting any business in the District of Columbia;
> (2) contracting to supply services in the District of Columbia;
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if [the defendant] regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
> (5) having an interest in, using, or possessing real property in the District of Columbia;
> (6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or
> (7)  marital or parent and child relationship in the District of Columbia . . . .

D.C. Code § 13-423(a).

In order to comport with due process, moreover, a nonresident defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  Those guarantees are satisfied "if the defendant has 'purposefully directed' his activities at residents of the forum," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Keeton v. Hustler Mag., Inc., 465 U.S. 770,

774 (1985)), and if "the litigation results from alleged injuries that 'arise out of or relate to' those activities." Id. (quoting Helicopteros, 466 U.S. at 414).

Crisman asserts that he does not live in our city, see Crisman MTD at 4, and Plaintiff's Complaint (and other pleadings) allege nothing to the contrary. Those pleadings, moreover, are entirely bereft of facts suggesting that Crisman has had any of the contacts with the District enumerated in its long-arm statute. Crisman's purportedly unlawful entry onto Plaintiff's property at the center of this case, after all, took place in Arkansas. The Court, consequently, has neither general nor specific personal jurisdiction over him.

In resisting this conclusion, Plaintiff quotes a portion of the long-arm statute that states that "the court may exercise personal jurisdiction if there is any basis consistent with the United States Constitution for the exercise of personal jurisdiction." Pl. Opp. to Crisman MTD, ¶ 3 (quoting D.C. Code § 13–423(7)(E)). He argues that such a basis exists here because Crisman's August 2017 entry on his property was directed by employees of Interior "located in Washington." Id., ¶¶ 2–3. Even were that a sufficient connection to the District under the Due Process Clause — which it is not, as explained below, see infra Section III.C.1 — that provision of the long-arm statute applies only to claims for relief arising from the defendant's "marital or parent and child relationship in the District of Columbia." § 13–423(7). It has no relevance here.

### 3.  Statute of Limitations

There is little question that dismissal of the claims against Crisman is overdetermined. The cause of action Wine most clearly has asserted as to this Defendant is Section 1983, through which he alleges a violation of his Fourth Amendment rights. In the District of Columbia, however, such claims are subject to a three-year statute of limitations. See Earle v. Dist. of

Columbia, 707 F.3d 299, 305 (D.C. Cir. 2012) (citing D.C. Code § 12–301(8)).  This action, filed

five years after the alleged Fourth Amendment violation took place, comes far too late.

Wine protests that Crisman's "conspiracy to commit trespassing, breaking and entering,

and deprivation of civil rights" is what he calls a "continuing conduct crime," and that his efforts

to "conceal [his] unlawful actions" are "ongoing at present" through a "malicious prosecution

commenced by the state of Arkansas."  Pl. Opp. to Crisman MTD, ¶¶ 4–5.  Not only is this

allegation too conclusory to survive a motion to dismiss, see Iqbal, 556 U.S at 678, but even

taken as true, it does not alter the reality that the statute of limitations has expired.  "[A]

conspiracy generally ends when the design to commit substantive misconduct ends; it does not

continue beyond that point merely because the conspirators take steps to bury their traces[.]"

Pyramid Secs. Ltd. v. IB Resol., Inc., 924 F.2d 1114, 1117 (D.C. Cir. 1991) (cleaned up); see

also United States v. James, 494 F.2d 1007, 1026 (D.C. Cir. 1974) ("A criminal conspiracy

continues until the objects for which it was formed have been accomplished.").  Therefore, any

conspiracy to violate Plaintiff's rights would have ended on December 14, 2017 — and the

window to seek relief closed in December 2020.  Conspiracy or no conspiracy, Wine's Section

1983 claims are time barred.

B.  Federal-Agency Defendants

All claims against the two federal agencies — Homeland Security and Interior — must

also be dismissed on sovereign-immunity grounds.  "It is axiomatic that the United States may

not be sued without its consent and that the existence of consent is a prerequisite for

jurisdiction."  United States v. Mitchell, 463 U.S. 206, 212 (1983).  Such consent may not be

implied but must be "unequivocally expressed."  United States v. Nordic Village, Inc., 503 U.S.

30, 33–34 (1992) (citations omitted).  The United States has not waived its sovereign immunity

for constitutional-tort claims, as courts in this district have consistently observed.  See, e.g., Harris v. Holder, 885 F. Supp. 2d 390, 397 (D.D.C. 2012); Jones v. Delaney, 610 F. Supp. 2d 46, 49 (D.D.C. 2009); see also Meyer, 510 U.S. at 477.  Therefore, any such claim must be dismissed.

The Government has indeed waived sovereign immunity for certain other torts under the Federal Tort Claims Act.  See 28 U.S.C. § 1346(b).  Administrative exhaustion of such claims, however, is a prerequisite to suit.  See 28 U.S.C. § 2675(a) ("An action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."); accord Benoit v. Dep't of Agric., 608 F.3d 17, 21 (D.C. Cir. 2010) (FTCA's "limited waiver of sovereign immunity . . . requires that the claimant have exhausted his administrative remedy before filing suit").  Therefore, to the extent that Wine alleges a trespass claim (or other non-constitutional tort) within the FTCA's ambit, the claim must be dismissed because he has not alleged that he presented it first to DHS or Interior.  Absent that, he fails to invoke the FTCA's limited waiver of sovereign immunity.

C.  Federal-Officer Defendants

And then there were two.  Davidson (Interior "supervisor") and Henry (DHS officer) are obviously immune from Wine's damages claims against them in their official capacities for the same reason that their respective agencies are immune.  See Harris, 885 F. Supp. 2d at 397 ("A suit against a federal official in his official capacity is treated as a suit against the government itself.") (citing Kentucky v. Graham, 473 U.S. 159, 165–66 (1985)); supra Section III.B.  The only question is whether those claims may still proceed against them in their personal capacities.

They cannot: the Court lacks personal jurisdiction over either Defendant and the claims are too late. See ECF No. 27-1 (Fed. Defs. MTD) at 7–10, 22.

        1.  *Personal Jurisdiction*

Begin with personal jurisdiction.  The burden falls on Wine to allege facts showing that jurisdiction exists.  See FC Inv. Grp. LC, 529 F.3d at 1091.  That means he must show that each Defendant is either domiciled here in Washington or that each has made any of the contacts with the city enumerated in its long-arm statute and that such contacts comply with due process.

As to Henry, the only allegation Wine offers connecting him to the District of Columbia is that his December 2017 entry onto Wine's property in Arkansas was "planned and ordered by [largely unnamed] federal government personnel residing in Washington, D.C."  ECF No. 29 (Pl. Opp. to Fed. MTD), ¶¶ 6–7.  Setting aside the conclusory nature of this contention, it still fails to allege the "minimum contacts" with D.C. required for personal jurisdiction under the Due Process Clause, as there is no plausible sense in which merely working at the direction of an agency headquartered here is a "purposeful availment" of this forum.  See, e.g., Baez v. Connelly, 734 F. Supp. 2d 54, 56–57 (D.D.C. 2010) (mere fact that "head-office" of defendants' agency was in D.C. insufficient to show "minimum contacts"); Scinto v. Fed. Bureau of Prisons, 608 F. Supp. 2d 4, 7–8 (D.D.C.), aff'd, 352 F. App'x 448 (D.C. Cir. 2009) (that defendants followed rules and directives originating from Bureau of Prisons headquarters in D.C. insufficient to establish personal jurisdiction).

As to Davidson, the closest Wine comes to connecting him with the District is the statement that the December 2017 entry on his property occurred "at the behest of Davidson and other Department of the Interior employees located in Washington, D.C. (specifically Ray Limon of the Department of the Interior acting on his own and through his subordinates)."  Pl. Opp. to

11

Fed. MTD, ¶ 2.  It is unclear, at first glance, whether the modifier "located in Washington, D.C." applies only to the "other" Interior employees or to Davidson as well.  In a pleading Wine submitted in response to the Court's Order denying his motion for jurisdictional discovery, however, he clarifies that Davidson worked with him in the Arkansas field office of the U.S. Fish and Wildlife Service.  See ECF No. 37 (Pl. Response to Discovery Order), ¶ 2.  The Court thus does not interpret the prior statement to allege that Davidson lived or worked in D.C., and it sees no other plausible basis for exercising personal jurisdiction over him.

### 2. *Statute of Limitations*

Plaintiff's Fourth Amendment claims against these two men, in any event, are time barred.  Wine's cause of action is purportedly derived from Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), in which the Supreme Court ruled that, under limited circumstances, a "federal agent acting under color of his authority" may be sued for "damages consequent upon his unconstitutional conduct."  Id. at 389.  In the District of Columbia, plaintiffs have a three-year window to bring a Bivens claim, the accrual of which is typically measured from the date when the plaintiff has a "complete and present cause of action" enabling him to "file suit and obtain relief."  Loumiet v. United States, 828 F.3d 935, 947 (D.C. Cir. 2016).  As Wine's claim accrued on the day of the alleged trespass, December 14, 2017, this suit (filed in January 2023) is two years too late.  To the extent that Wine also alleges a trespass claim under Arkansas law, that, too, is subject to a three-year statute of limitations that has long expired.  See Ark. Code § 16-56-105(4).

Wine's riposte to this basis for dismissal is the same as it was to Crisman's invocation of Section 1983's statute of limitations — *i.e.*, that Davidson and Henry conspired to violate his rights and "continue to conceal their crimes."  Pl. Opp. to Fed. MTD, ¶¶ 9–10.  It comes up short

for the same reasons: the allegation is conclusory, and (even if true) any such conspiracy would

have ended after the break-in on December 14, 2017.  See supra Section III.A.3.

## IV.     Conclusion

For the foregoing reasons, the Court will grant Defendants' Motions to Dismiss and

dismiss the State of Arkansas *sua sponte*.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  July 17, 2024